UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NICHOLAS S. LARSEN,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**NANCY A. BERRYHILL,**<br>**Acting Commissioner of Social**<br>**Security,**<br><br>    **Defendant.** | Civ. No. 18-15221 (KM)<br><br>**OPINION** |

KEVIN MCNULTY, U.S.D.J.:

Plaintiff Nicholas S. Larsen brings this action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Social Security Disability benefits ("SSDI") under Title II of the Social Security Act. Larsen seeks to reverse the finding of the Administrative Law Judge ("ALJ"), as of December 12, 2017, that he had not met the Social Security Act's definition of disabled since March 7, 2011, the alleged disability-onset date. For the reasons stated below, the decision of the ALJ is affirmed.

I.    BACKGROUND[1]

A. Procedural History

On December 5, 2014, Mr. Larsen filed an application for disability benefits under Title II of the Social Security Act. The alleged onset date (as later

---

[1]    Citations to the record are abbreviated as follows:

    "DE __"    =    Docket entry in this case.
    "R. __"    =    Administrative Record (DE 7) (page numbers refer to the page numbers in the lower-right corner of the page—not the ECF docket page numbers).

amended) was March 7, 2011, his eighteenth birthday. (R. 398–410, 431). His application was denied initially and on reconsideration.

Larsen requested a hearing before an Administrative Law Judge. He was represented by counsel, Jennifer Manger, Esq., who filed a brief in advance of the hearing. (*See* R. 561.) On July 28, 2017, Larsen, represented by his attorney, appeared and testified at a hearing before ALJ Scott Tirrell. His father testified as well. The ALJ also heard testimony from Michael Smith, a vocational expert ("VE"). (R. 66–103).

On December 12, 2017, the ALJ issued a decision finding that Larsen was not disabled in the relevant period within the meaning of the Social Security Act. (R. 42–65).

Counsel continued to represent Mr. Larsen on his appeal to the Appeals Council. Counsel supplemented the record and filed a brief on appeal. (*See* R. 574–91.) The Appeals Council upheld the ALJ's decision, rendering it a final decision of the Commissioner. (R. 1–38)

This action challenging the Commissioner's denial of benefits was filed on October 23, 2018. (DE 1) Mr. Larsen was no longer represented by counsel, and appeared in this court *pro se*. The case was initially assigned to Chief Judge Jose L. Linares. The record was filed on January 28, 2019, and Judge Linares imposed a schedule for the parties' submissions. (DE 7, 8) On March 15, 2019, Judge Linares again ordered the parties to follow a submission schedule. (DE 10) On April 11, 2019, the complaint was dismissed for lack of prosecution. (DE 11)

On April 26, 2019, plaintiff filed a request to vacate the dismissal. It was accompanied by a statement of grounds for reversal. (DE 12) By order dated May 7, 2019, Judge Linares granted the plaintiff's request to vacate the dismissal.

In that May 7 order, Judge Linares ordered the SSA to file by May 21, 2019, a response to the plaintiff's contentions. (DE 13; *see* D.N.J. Loc. Civ. R. 9.1(d)(2).). On May 17, 2019, following Judge Linares's retirement, the case was

2

reassigned to District Judge Katharine S. Hayden. (DE 14) On May 20, 2019, the government filed its response as directed by Judge Linares. (DE 15).

In the same May 7, 2019 order, Judge Linares ordered the plaintiff to file a brief on the merits by June 24, 2019. That order specifically restated the requirements that the brief set forth a statement of issues, a statement of the case and procedural history, a statement of the relevant facts in the administrative record, and the plaintiff's arguments on the merits, separately treating each issue presented. (DE 13; *see* D.N.J. Loc. Civ. R. 9.1(e)(5).). No brief was ever filed by the plaintiff.

On May 20, 2019, the defendant filed a brief as ordered by Judge Linares. (DE 15)

On March 5, 2020, the case was reassigned to me. (DE 17) Lacking a brief from the plaintiff, I have nevertheless reviewed the Complaint (DE 1), the plaintiff's statement of contentions (DE 12), the briefs his counsel filed before the SSA (R. 561–91), and the record.

## B. Disability

To qualify for benefits, a claimant must demonstrate, *inter alia*, a disability: *i.e.,* that he "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (d)(1)(A). A person is deemed unable to engage in substantial gainful activity

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2).

### C. The Five-Step Process

Under the authority of the Social Security Act, the Administration has established a five-step evaluation process for determining whether a claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

**Step One:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If yes, the claimant is not disabled. If not, move to step two.

**Step Two:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. If the claimant has a severe impairment, move to step three.

**Step Three:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, subpt. P, app. 1, Pt. A. (Those Part A criteria are purposely set at a high level to identify clear cases of disability without further analysis). If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step Four:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If yes, the claimant is not disabled. If not, move to step five.

**Step Five:** At this point, the burden shifts to the Commissioner to demonstrate that the claimant, considering his age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see*

*Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

### D. This Court's Standard of Review

As to all legal issues, this Court conducts a plenary review. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

Under 20 C.F.R. § 416.927(c), ALJs are required to weigh and evaluate "every medical opinion." Medical opinions are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

20 C.F.R. § 404.1502 lists the "acceptable medical sources" that can provide evidence to establish an impairment. "Treating source means [an] acceptable medical source who provides [the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 416.927(a)(2) (alterations added). Controlling weight can be given to "a treating source's medical opinion on the issue(s) of the nature and severity" of the claimant's impairments if the medical opinion is "well supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 416.927(c)(2).

"[A] reviewing court should not re-weigh the medical opinions of record but should consider only whether the ALJ's weighing of such opinions was supported by substantial evidence." *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) (citing *Monsour Med. Ctr. v. Heckler*, 806 F.3d 1185, 1190 (3d Cir. 1986)). "The ALJ — not treating or examining physicians or State agency consultants — must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)).

When an ALJ totally rejects a medical opinion, he or he is required to point to "contradictory medical evidence." *Cunningham v. Comm'r of Soc. Sec.*, 507 Fed. App'x 111, 118 (3d Cir. 2012). Where, as here, the ALJ is discounting, rather than rejecting, opinion evidence, he or he must "consider all the evidence and give some reason for discounting the evidence." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).

When there is substantial evidence to support the ALJ's factual findings, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610-11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder."). This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865-66 (3d Cir. 2007).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221-22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000).

6

## II.   DISCUSSION

### A. The ALJ's Decision

The ALJ followed the five-step process in determining that Larsen was not disabled. The ALJ's findings may be summarized as follows:

**Step One:** The ALJ determined that Larsen had engaged in sporadic work activity, but that it did not rise to the level of substantial gainful activity since the onset date. (R. 45).

**Step Two:** The ALJ determined that Larsen had the following severe impairments: Becker's muscular dystrophy, lumbar degenerative disk disease, obesity (status post gastric surgery), left shoulder degenerative joint disease, major depressive disorder, generalized anxiety disorder, panic disorder with agoraphobia, and attention deficit hyperactivity disorder (ADHD) (20 CFR § 404.1520(c)). (R. 45).

**Step Three:** The ALJ determined that Larsen did not have an impairment, or combination of impairments, that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404, subpt. P., app. 1. (R. 13)

**Step Four:** The ALJ found that Larsen had the following RFC:

> 6.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance; and occasionally stoop, kneel, crouch, and crawl. He can frequently use the nondominant upper extremity for overhead reaching. He can never work at unprotected heights, work with dangerous machinery, or work with moving mechanical parts. The claimant can never tolerate concentrated exposure to extreme cold or heat or to pulmonary irritants, such as fumes, odors, dust, gases, and poor ventilation. The claimant can understand, remember, and carry out simple instructions. He can perform simple, routine tasks. He can make simple work-related decisions. He requires an occupation with set routines and procedures and not more than occasional changes during the work day. The claimant cannot work at a production rate pace, meaning assembly line work or work where production

7

is assessed more than once per work day. He can have frequent interaction with coworkers, occasional interaction with supervisors, and occasional interaction with the general public.

(R. 48) In short, this was a finding of capacity to perform sedentary work, with further limitations.

There was no significant past relevant work. (R. 55) The ALJ noted that Mr. Larsen was a younger individual (18 as of the onset date), and had a high school education. (R. 55)

**Step Five**: The ALJ took into account the claimant's age, education, work experience, and RFC. With the aid of the testimony of the VE, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Mr. Larsen could perform:

Document preparer (D.O.T. number 249.587-018), a sedentary, SVP-2 occupation with 64,734 jobs in the nation; weight tester (D.O.T. Number 539.485-010), a sedentary, SVP-2 occupation with 489,750 jobs in the nation; and lens inserter (D.O.T. Number 713.687-026), a sedentary, SVP-2 occupation with 217,500 jobs in the nation.

(R. 56)

### B. Contentions

Mr. Larsen submitted a statement (DE 12) containing the following contentions or objections to the ALJ's decision:

- Complexity and interconnection of numerous disabilities
- Extensive unsuccessful efforts to correct and or minimize said disabilities
- Inability to successfully or maintain employment due to physical, mental and psychological limitations.
- Progressive deterioration of physical, mental and emotional health

Becker muscular dystrophy (BMD) is a progressive disease with no cure. Therefore, it can not be evaluated in a snapshot of time, it must rather be seen and evaluated as a continuum with both concrete effects and pending effects.

. . . [items from above repeated]

8

- Shortened life expectancy due to the condition (BMD) additionally impacted by cardiomyopathy, the leading cause of death in Becker Muscular Dystrophy.
- All of the above require extensive medical supervision, interventions, tests and medications.
- Nicholas' medical benefits end December 31, 2019.

Questioning conclusion drawn from:
Exhibit      6F/2  - Cardiac
             4F/4-5
Exhibit      10F/1 – Learning difficulties
             14F/1
P.15 of 16 doc. P. 56 – document preparer, weight tester, lens inserter

(DE 12 at pp. 4–5)

In connection with Mr. Larsen's appeal to the Appeals Council, his attorney submitted a brief. The gist of counsel's legal argument is as follows:

> Mr. Larsen is a twenty-five (25) years old individual alleging disability since March 7, 2011 due to attention deficit hyperactivity disorder, muscle dystrophy, anxiety, depression and learning disorder resulting in social anxiety, difficulty with concentration, sleep disturbance, impulse control, difficulties with activities of daily living and difficulties with functioning as well as chronic pain and limitations to sitting/standing/walking and lifting and carrying.

> Mr. Larsen is a high school graduate with some college credits. The claimant was not to cope effectively while enrolled at community college. The claimant's academic background has been marked by difficulty sustaining attention, staying organized and getting along with others. As indicated in Exhibit 1F, the claimant is note to temper tantrums and provoking other students. Furthermore, the claimant was noted to have frequently inattentive, distracted and hyperactive, difficulty paying attention to assignments in school and makes careless mistakes, frequently got of his chair and was frequently inattentive to the examiner and frequently got of his chair and was frequently inattentive to the examiner, (Exhibit 4F). The claimant's past relevant work has been minimal but has included fast food worker, cashier, recreation clerk and marketing coordinator. His work activity also has been met with problems. As noted in Exhibit 9F, reports high level of

9

distractibility and inattentive and has been reprimanded by his bosses before.

(R. 578 (*sic*))

Counsel then lists and summarizes in bullet form Exhibits 1F through 27F. (R. 578–89) The argument resumes as follows:

The Administrative Law Judge faced to thoroughly evaluate several key exhibits. These exhibits include those that were submitted subsequent to the hearing and for which the record was left specifically open for i.e. Exhibits 24F–28F.

The Judge merely glances over these aforementioned records. For example, "moreover the claimant has recently sought emergency treatment for another motor vehicle accident. However, the relevant emergency room does not establish injury that will support a further restriction of residual functional capacity, (Page 9 of the Decision). The Judge makes these remarks as it relates to Exhibit 27F. He neglects to elaborate or discuss the hospital visits within October 2016 and November 2016 in which the claimant presents with symptoms of increased pain and difficulty ambulating. Moreover, each time the claimant presented with symptoms of increased pain and difficulty ambulating then the claimant follows up with a course at Care One Rehabilitation as noted in Exhibit 26F. The Judge only makes a singular reference to Exhibit 26F, (Page 12 of the Decision).

(R. 590 (*sic*))

## C. Analysis

I take the plaintiff to be focusing on the ALJ's determination of his residual functional capacity and the related step five conclusion that there are jobs in the national economy that he could perform. Essentially the plaintiff is arguing that the ALJ failed to consider the disabling effect of his physical and mental impairments in combination; the ongoing and progressive nature of his impairments, especially Becker's muscular dystrophy (BMD); the impact of certain medical records, and particularly exhibits submitted after the hearing as they bear on back pain.

I find, that the ALJ carefully considered the medical and other evidence, giving reasons for crediting or discounting various portions of it. He considered the claimant's subjective complaints, but found them to be only partly supported by the medical evidence. The ALJ did not merely compile lists of diagnoses, but analyzed the concrete evidence of functional limitations, as was proper. *See Petition of Sullivan,* 904 F.2d 826, 845 (3d Cir. 1990).  There was substantial evidence to support the ALJ's conclusions.

    *1. Statements of claimant, his mother and father*

The ALJ noted the testimony of the plaintiff and his father. The claimant testified to a history of inability to hold down jobs because they were too physical or because he had difficulty maintaining pace. He spoke of disabling radiating back pain and inability to sit, stand or walk. He testified to inability to concentrate, fatigue requiring naps, and insomnia. Others, he said, had to remind him to do chores, eat, and take medication. He acknowledged that he had obtained opioids in the past, both from pain management centers and on the street. His father agreed that the claimant needed supervision and was unable to care for himself. (R. 49)

The ALJ noted a third-party function report submitted by the claimant's father. This report described difficulties with walking and lifting, as well as problems with memory, concentration, and response to stress. The father also reported activities that the claimant could perform, however. These included personal care, driving, management of finances, sitting to use a computer, attending church and other functions. The ALJ discounted the father's lay medically based opinions regarding severity, but his account of the claimant's activities, the ALJ found, are actually largely consistent with the medical evidence supporting the limitations of the RFC as found.  (R. 54–55)

The ALJ also discussed a third-party function report submitted by the claimant's mother. She described problems sitting and standing in the same position for a period of time, distraction, perseveration on a topic, and social problems. She stated, however, that the claimant could lift ten pounds, prepare meals, do laundry, shop, drive, and play video games. Again, the ALJ

discounted the mother's lay medically based opinions regarding severity, but her account of the claimant's activities, the ALJ found, are actually largely consistent with the medical evidence supporting the limitations of the RFC as found. (R. 55)

The ALJ credited all of these statements to some degree, but discounted the claims of severity as being inconsistent with the medical record.

### 2. *Physical Limitations*

The ALJ credited evidence of BMD, beginning in the claimant's childhood, as well as spinal impairment with disk degeneration, and more recent complaints of pain from motor vehicle accidents. He considered their combined effect. The medical evidence, he found, established some physical limits (which are reflected in the RFC), but no "profound deficits in strength, mobility, and motor skills." (R. 49) The claimant objects that BMD is progressive, but the ALJ did not fail to consider the extent of impairment through the relevant period.

The ALJ cited the radiological imaging results. These showed multilevel degeneration in the lumbar and thoracic spine with nerve root abutment and foraminal narrowing. Nerve conduction testing did not clearly establish radiculopathy or neuropathy. He cited a mildly antalgic gait, but repeated physical examinations which had shown intact neurological and musculoskeletal function with only mild deficits in motor strength and range of motion. (R. 49)

Regarding BMD specifically, the ALJ cited a physiatry evaluation at the Rutgers-NJMS Muscular Dystrophy Association clinic which revealed some weakness and reduced range of motion, with intact sensation and 4+ strength in joints, and ability to run and jump, with limitations on endurance. (R. 50)

As to back pain, the ALJ cited post-hearing supplementary evidence. Dr. Weinberg's treatment notes in connection with a pain management appointment in January 2017 showed nothing severe or remarkable. Dr. Weinberg could not perceive any physical basis consistent with the complaints of excruciating pain. The claimant was now claiming worsening pain despite

the administration of opiates. A physical examination demonstrated normal gait and station, intact range of motion of the extremities, and normal neurological functioning without sensory loss. In short, the examination was unremarkable, and his review of radiological imaging showed mild changes that did not correlate to the complaints. (R. 50, citing Ex. 27F)

At the agency level, counsel objected that the Judge considered the January 2017 evaluation of Dr. Weinberg (Ex. 27F), but did not adequately discuss the October 2016 and November 2016 hospital (Hackensack University Medical Center ("HUMC")) or rehab visits, especially as reflected in in Exhibit 26F (DE 7-14), submitted after the hearing.

Those 2016 visits involved complaints of pain following the claimant's latest automobile accident in 2016. He was given pain medication and sent to rehab. (R. 86–88) Exhibit 26F, however, notes improvement and a guarded prognosis; decreased pain with oxycodone, but requests for more pain meds; and a request for admission at a different hospital, which sent him back to HUMC.[2]

The ALJ, it is true, referred only passingly to Exhibit 26F, although he was well aware of the hospitalization and rehab in late 2016. (*See* hearing Tr., R. 86–87.)  A remand is not required. These records reflect treatment following the 2016 car accident, which would naturally have caused additional pain. They reflect that the pain lessened with treatment, however. The ultimate assessment as to ongoing pain was the later Weinberg examination. That examination did not contradict the earlier treatment records; it followed them in time, and reflected the results of that treatment. Moreover, Dr. Weinberg made specific findings as to the remaining functional limitations created by the pain and the need, or not, to continue with medication.

---

[2]     Dr. Falli on October 5, 2016 noted radiology results similar to those previously noted, with a notation that a "small" annular fission was likely responsible for the patient's neuropathic pain. She prescribed Lyrica and a Medrol Dose Pack, but there was no finding of ongoing functional limitations beyond those found by the ALJ, and no recommendation of surgical intervention. (R. 1416)

The ALJ, moreover, was compelled to consider the plaintiff's repeated requests for pain medication in the context of a history of opioid abuse. That history had led providers to cease prescribing further narcotics.[3] There had been a history of somewhat effective treatment, without surgery. (R. 50, citing Exs. 14F, 22F/4, 22, 24F, 25F/3, 27F)

Obesity was properly considered not as an independent impairment but as a contributor to the overall disability findings and the limitations of the RFC. There was a noted history of obesity. As a result of surgical and other treatment since 2013, however, the plaintiff's current BMI was 30; his height and weight were reported as 5'10" and 200 pounds.[4] The associated effects and aftereffects of obesity were found to contribute to the RFC, particularly to the extent it was based on back pain, the ALJ noted no significant accompanying cardiovascular, respiratory, or musculoskeletal difficulties. (R. 51; *see also* R. 47.)

The opinion of Dr. Skounakis, a chiropractor rather than an acceptable medical source, was nevertheless considered as that of a treating provider. He suggested no limitations in lifting and carrying, and standing or walking up to six hours per day. The ALJ nevertheless relied on the plaintiff's own testimony to impose further limits. (R. 53) [5]

---

[3]     The period of abuse inferably overlapped the 2016–17 course of treatment. The claimant testified that he went to detox in March 2017 and had been attending NA meetings once per day. (R. 85) The claimant again sought but was refused pain medication in July 2017. (R. 1462)

[4]     A BMI of 30 is at the very bottom of the obese range. https://www.cdc.gov/obesity/adult/defining.html

[5]     The ALJ also noted a finding of left shoulder degenerative joint disease, leading him to impose an additional limitation on overhead reaching. (R. 51) He noted transient episodes of neurological disturbance, possibly attributable to BMD, but also possibly the result of dehydration or reactions to medication. These, he found, were temporary and did not warrant any further restrictions to the claimant's RFC. (R. 50–51)

The claimant's statement of issues objects to the ALJ's treatment of Exhibits 6F/2 and 4F/4-5 (regarding cardiac complaints). The ALJ's finding that these did not

The opinion of Dr. John Bach received some weight as that of a treating physician. The ALJ rejected his conclusion of disability, a determination reserved to the Commissioner. Dr. Bach stated that the plaintiff should not sit for more than one to two hours "at a time"; the ALJ considered this, but found it could be accommodated with breaks in the work day. (R. 53)

Dr. Caroline Shubeck and Dr. Morris Ferman opined on the plaintiff's RFC for the Disability Determination Service. Both concluded that he could perform a reduced range of light work with moderate postural and environmental restrictions, and the ALJ gave their opinions some weight, because they were consistent with other evidence. He accepted, however, that the evidence as a whole, including the claimant's testimony, suggested overall limitations on endurance that would be inconsistent with light work. (R. 54)

The ALJ also noted physical activities consistent with the RFC as found. The claimant did simple household chores; drove to NA meetings; and, during the period of claimed disability, engaged in long distance travel for work and vacation. (R. 51)

The ALJ's findings regarding Mr. Larsen's physical limitations were supported by substantial evidence.

### 3. *Mental Limitations*

The ALJ acknowledged a history of anxiety and depression, as well as ADHD. Associated symptoms included variable mood, social anxiety, and difficulties maintaining focus and concentration. ALJ found that these did not, however, result in impairments of cognitive, social, and intellectual functioning that would preclude all work. The medical evidence supported an RFC

---

rise to the level of a severe impairment is supported by the record, which did not show any persistent or serious limitations. (R. 46)

The claimant's statement of issues also faults the ALJ's treatment of Exhibit Exhibits 10F/1 and 14F/1 (regarding learning difficulties). The ALJ's finding that these did not rise to the level of a severe impairment is supported by the record, as these largely referred to childhood difficulties and the record contained no relevant adult testing. (R. 46)

containing restrictions with respect to workplace change, pace, and decision making. (R. 51)

The ALJ appropriately cited treatment records and mental status examinations. These showed normal orientation, some difficulty with attention, but logical and coherent thinking with adequate memory and good judgment. Treatment had improved mood stability and sleep problems. The upshot of the treatment notes was an assessment of mild to moderate functional difficulties. (R. 50–51)

A March 2017 visit to Nomita Sontyu for counseling was consistent with the foregoing. Although the claimant's thinking was concrete, he had normal thought processes and judgment. She noted moderate limitations with respect to task complexity and social contact, due to problems with memory and impulse control, suggesting that his exposure to stressors should be limited. She concluded that the claimant retained sufficient cognitive, social, and intellectual skills to work, subject to the limits of his RFC. As to understanding, remembering, or applying information, the ALJ found a mild limitation, noting that the claimant could perform basic cognitive tasks. (R. 52)

As to concentrating, persisting, or maintaining pace, the ALJ found a moderate limitation. He accepted the claimant's self-evaluation that he has difficulty maintaining focus and attention, which was consistent with the medical record. This impairment stopped well short, however, of psychosis or any other serious abnormality. While not suited for complex tasks, the claimant was able to focus sufficiently to drive, manage his money, and perform other basic tasks. As for adapting or managing oneself, the ALJ likewise found a mild limitation. While his father opined that he could not live on his own, he does travel independently, manage finances, and take care of his own grooming and hygiene. (R. 52–53)

A check-box psychiatric screening form (Ex. 26F/85) seems to have suggested disability, but without supporting data. In any event it was discounted for sufficient reason; the source was not identified, and in any event its legal conclusions were of no weight.

16

The opinion of Dr. Harvey Rice, the psychiatric consultative examiner, was credited to some degree as that of an examining specialist. Dr. Rice opined that the impairment would last at least twelve months, but the ALJ noted that there were no findings as to the degree of the claimant's functional limitations, and particularly no findings on a function-by-function basis. (R. 54)

The report of Fern Kopakin, MSW, received less weight, as she is not an acceptable medical source. She reported that the claimant failed to function autonomously and demonstrated poor judgment as a result of impulsivity. She, too, failed to make a function-by-function analysis of what the claimant is capable of. (R. 54)

Dr. Pamela Foley and Dr. Alexander Goin reviewed the evidence concerning the claimant's mental RFC. They concluded that he could follow simple instructions; maintain concentration and persist for two-hour segments in the course of a work day; and adapt to a work setting. They foresaw moderate difficulties with coworkers and changes in the workplace routine. The ALJ found their opinions to be consistent with the evidence received at the hearing level, and gave those opinion substantial weight. (R. 54)

The ALJ's findings as to mental impairments, both alone and in combination with the physical impairments, were supported by substantial evidence.

### 4. RFC and Jobs in the National Economy

The evidence summarized above is substantial, and it supports the ALJ's balanced finding regarding the RFC. Sedentary work, with limitations tailored to the claimant's impairments, taken as a whole, is a legitimate conclusion from this record.[6]

---

[6] The most prominent of those RFC limitations, quoted in full above, are:

occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds;

occasionally balance stoop, kneel, crouch, and crawl;

frequently use the nondominant upper extremity for overhead reaching;

17

The plaintiff seemingly objects to the step five finding that there are jobs in the national economy that the claimant could perform. As is common, that objection is in truth an objection to the RFC finding itself. Having upheld the RFC finding, I find nothing in the record to contradict the vocational expert's conclusion that the cited jobs would reasonably fall within the limits of that RFC. (*See* VE testimony, R. 94–102.)

### III.    CONCLUSION

For the foregoing reasons, the decision of the Commissioner is affirmed. An appropriate order accompanies this Opinion.

Dated: May 6, 2020

/s/ Kevin McNulty

**Hon. Kevin McNulty**
**United States District Judge**

---

never work at unprotected heights, or work with dangerous machinery or moving mechanical parts;

can understand, remember, and carry out simple instructions;

can perform simple, routine tasks and make simple work-related decisions;

set routines and not more than occasional changes during the work day;

claimant cannot work at a production rate pace, meaning assembly line work or work where production is assessed more than once per work day;

can have frequent interaction with coworkers, occasional interaction with supervisors, and occasional interaction with the general public.

(R. 48)